NOTICE
Decision filed 07/29/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 231066-U

NO. 5-23-1066

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Bond County. |
| | ) | |
| v. | ) | No. 22-CF-114 |
| | ) | |
| ANTHONY G. SIMMONS, | ) | Honorable |
| | ) | Christopher J.T. Bauer, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Boie and Vaughan concurred in the judgment.

**ORDER**

¶ 1   *Held*: Trial counsel was ineffective for failing to file a motion to suppress statements by defendant who had invoked his right to silence.

¶ 2   A jury found the defendant, Anthony G. Simmons, guilty of unlawful possession of controlled substance-fentanyl and unlawful possession of drug paraphernalia. The defendant was sentenced to three years and six months in the Illinois Department of Corrections (IDOC), followed by six months of mandatory supervised release (MSR) for the unlawful possession of a controlled substance-fentanyl. The defendant was also sentenced to a concurrent sentence of 180 days for unlawful possession of drug paraphernalia. On appeal, the defendant argues that trial counsel was ineffective for failing to file a motion to suppress statements made by the defendant after he had invoked his right to remain silent. For the following reasons, we vacate the defendant's conviction and sentence for unlawful possession of drug paraphernalia and remand for a new trial.

1

¶ 3                        I. BACKGROUND

¶ 4     On September 15, 2022, the defendant was charged by information with two counts of unlawful possession of controlled substance in violation of section 402(c) of the Illinois Controlled Substances Act (720 ILCS 570/402(c) (West 2022)) and one count of unlawful possession of drug paraphernalia in violation of section 3.5(a) of the Drug Paraphernalia Control Act (720 ILCS 600/3.5(a) (West 2022)). The State claimed that the defendant knowingly possessed drug paraphernalia, a glass pipe, with the intent of using the pipe to ingest cocaine. The State subsequently dismissed one count of unlawful possession of controlled substance without prejudice.

¶ 5     The jury trial began on September 25, 2023. After opening statements, Devon Leitschuh, a Bond County deputy, testified for the State. Leitschuh testified that on September 13, 2022, he had responded to a report of a vehicular accident involving the defendant. After arriving on the scene, Leitschuh accompanied the defendant to the hospital in an ambulance. Leitschuh was notified that the defendant had an outstanding warrant. Once the defendant was released from the hospital, Leitschuh transported the defendant to the Bond County jail.

¶ 6     While Leitschuh was transporting the defendant to the jail, Leitschuh told the defendant that possession of contraband inside of the jail would result in a felony charge. Leitschuh testified that the defendant responded, "I don't think I have anything in my shoe." After arriving at the Bond County jail, Leitschuh searched the defendant's socks and shoes and found two small capsules which were confiscated. Leitschuh suspected that the capsules contained fentanyl, and testified fentanyl was too dangerous to field test. The two capsules were placed in an evidence bag for lab testing, and only one of the capsules recovered had been tested by the crime lab.

¶ 7    Mirranda Malloy testified that she was working as a deputy in Bond County on September 13, 2022, and responded to an accident that involved two vehicles on I-70. The defendant was the driver of one of the vehicles. Malloy testified that she found a glass pipe in the driver's side door pocket, and that the defendant would have had immediate control of the glass pipe. Malloy secured the glass pipe in an evidence bag. Two other broken pieces of glass pipe were also found inside of the vehicle. Malloy testified that glass pipes were used for smoking narcotics.

¶ 8    Malloy additionally testified that she had interviewed the defendant at the Bond County Sheriff's Department. Leitschuh was present during the interview. During the interview, the defendant admitted that he was the owner of the glass pipe, and he had smoked "marijuana, cocaine, pretty much everything" from the glass pipe. The defendant additionally admitted that the capsules found in his sock were his and that they were "downers." Malloy testified that the defendant's interview was recorded, and the interview was published for the jury and admitted into evidence without objection.

¶ 9    On the video recording, the defendant stated his name and birthdate as directed by Malloy. Malloy informed the defendant that he had been detained on a warrant, and that items had been found during a vehicle search. Then, Malloy showed the defendant glass pipes in evidence bags. At that point, Leitschuh directed Malloy to Mirandize[1] the defendant. Malloy proceeded to do so, and then, the following conversation occurred:

> "MALLOY: Knowing these rights do you wish to talk to me without having a lawyer present?
>
> THE DEFENDANT: Nah, you charging me for paraphernalia?
>
> MALLOY: Okay, you know you can stop talking at any time, and you also have the right to—

---

[1]See *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

THE DEFENDANT: You can take me back to my cell, man.

MALLOY: You don't want to talk to me at all?

THE DEFENDANT: Nah. For what? Paraphernalia? C'mon—

MALLOY: Okay. What about—

THE DEFENDANT: Are you serious?

MALLOY: Well, then, we have these too that were in your sock.

THE DEFENDANT: Okay. Them's pills.

MALLOY: What are they? What kind of pills are they? They don't—I couldn't find any like markings. I'm just like—I'm all like, yes, paraphernalia. It's just paraphernalia. So, like how—like–what—

THE DEFENDANT: Y'all charging—

MALLOY: What kind of paraphernalia is it?

THE DEFENDANT: Y'all charging me with paraphernalia?

MALLOY: What kind of—what, what does it have in it? What's it test— what's it going to test for when I take it back there and test it?"

Malloy showed the defendant an evidence bag with the "two pills" that were recovered from the defendant's sock. She continued to question the defendant about the pills and the glass pipes. The defendant responded to Malloy's questions. The defendant looked at the glass pipes and said that two of the glass pipes were not found in his car, while admitting that the third pipe was his. The defendant stated that he smoked marijuana and cocaine from the glass pipe. The defendant also accused Leitschuh with tricking him into admitting that he had the capsules. The defendant had additionally stated the pills were "downers." The entire video was approximately 17 minutes in length and ended after the defendant told the officers to take him back to his cell.

¶ 10    After the video was admitted into the evidence, the glass pipe that the defendant had identified as his pipe during his interrogation was also admitted into evidence. Malloy testified

that the glass pipe was not field tested or tested by the crime lab. She explained that the glass pipe had not been tested because the defendant admitted to "everything that he had smoked out of it" and the crime lab did not accept paraphernalia. Malloy acknowledged that glass pipes were used to smoke marijuana, and marijuana was legal in Illinois. Malloy additionally testified that the crime lab tested one of the two capsules recovered from the defendant and determined that the substance in the capsule was fentanyl.

¶ 11     After the State rested, the defense presented a motion for a directed verdict. The defendant argued that the State had not met their burden where the glass pipe had not been tested for controlled substances and that the glass pipe could have been used for a legal purpose. The defense further argued that the State had not demonstrated that the defendant knew that he had fentanyl in his sock as he believed that he possessed a "downer." The circuit court denied the motion for a directed verdict.

¶ 12     The defendant did not testify or present further evidence. After closing arguments, the jury deliberated and found the defendant guilty of unlawful possession of a controlled substance and possession of drug paraphernalia.

¶ 13     The defendant was sentenced to three years and six months in the IDOC followed by an MSR term of six months on the unlawful possession of a controlled substance conviction. The defendant was additionally sentenced to a concurrent 180-day sentence for his drug paraphernalia conviction. This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15     On appeal, the defendant argues that defense counsel was ineffective for failing to file a motion to suppress statements made by the defendant during his interview at the Bond County Sheriff's Department where the defendant had invoked his right to silence.

5

¶ 16    Criminal defendants have a constitutional right to effective assistance of counsel. *People v. Hale*, 2013 IL 113140, ¶ 15. Claims of ineffective assistance of counsel are governed by a two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, to establish a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance resulted in prejudice. *People v. Hughes*, 2012 IL 112817, ¶ 44. Both prongs of the *Strickland* test must be satisfied by the defendant for a finding of ineffectiveness. *People v. Veach*, 2017 IL 120649, ¶ 30. We apply *de novo* review to the defendant's ineffective assistance of counsel claims. *People v. Gunn*, 2020 IL App (1st) 170542, ¶ 91.

¶ 17    Generally, a decision of whether to file a motion to suppress is considered a matter of trial strategy and immune from claims of ineffective assistance of counsel. *People v. Martinez*, 348 Ill. App. 3d 521, 537 (2004). The defendant must demonstrate that "a reasonable probability exists both that the motion would have been granted and that the outcome of the trial would have been different had the evidence been suppressed." *Martinez*, 348 Ill. App. 3d at 537.

¶ 18    "Both the United States and Illinois Constitutions prohibit the state from compelling an individual to be a witness against himself in a criminal prosecution. U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10." *People v. Cox*, 2023 IL App (1st) 170761, ¶ 43. A defendant "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 478 (1966).

¶ 19    A voluntary confession is shown where the defendant makes a knowing and intelligent waiver of his privilege against self-incrimination. *People v. Braggs*, 209 Ill. 2d 492, 505 (2003).

6

An interrogation must cease when an individual indicates that he wishes to remain silent. *People v. Edwards*, 301 Ill. App. 3d 966, 977 (1998). Statements made after the invocation of the right to silence are admissible only if the interrogators scrupulously honored the defendant's right to cut off questioning. *Edwards*, 301 Ill. App. 3d at 977.

¶ 20    After the defendant was read his *Miranda* warnings, the defendant stated, "You can take me back to my cell, man." Malloy then asked the defendant if he wanted to talk, and the defendant said, "Nah. For what? Paraphernalia? C'mon." Malloy did not even pause the interrogation after she clarified with the defendant that he did not want to talk. She continued to question the defendant about the glass pipes and drugs obtained. The defendant's right to remain silent was not scrupulously honored. Therefore, any statement that he made to Malloy after that point would have been inadmissible had defense counsel filed a motion to suppress. There cannot be any valid trial strategy for defense counsel's failure to suppress the defendant's interrogation. The defendant has met his burden of demonstrating that defense counsel fell short of the standard of reasonableness required under *Strickland*.

¶ 21    The defendant must also demonstrate that defense counsel's error was prejudicial. Malloy testified that the glass pipe had not been tested for controlled substances. The defendant's admission during his interrogation was the only evidence used to show that he used the pipe to ingest illegal substances, and his statements made during the interrogation were used to show possession of a glass pipe found in the vehicle after an accident. The capsules, however, that were confiscated from the defendant by Leitschuh were determined to be fentanyl by the crime lab.

¶ 22    We find that the defendant has shown that a verdict of not guilty on the charge of possession of drug paraphernalia would be reasonable had the defendant's statements been suppressed. Therefore, we hold that defense counsel provided ineffective assistance.

¶ 23    Finally, we must consider whether another trial would violate the double jeopardy clause. Retrial is not precluded by the double jeopardy clause when a conviction is overturned because of an error in the trial proceedings, but retrial is barred if the evidence at the first trial was insufficient to sustain the conviction. *People v. King*, 2020 IL 123926, ¶ 52. In determining the sufficiency of the evidence, we consider whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *King*, 2020 IL 123926, ¶ 52. All evidence submitted at the first trial, including any improperly admitted evidence, may be considered when deciding the sufficiency of the evidence for double jeopardy purposes. *King*, 2020 IL 123926, ¶ 52.

¶ 24    The defendant has not challenged the sufficiency of the evidence on appeal, and his requested relief is the reversal of his conviction and remand for a new trial. We find that the record contains sufficient evidence from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. Therefore, no double jeopardy violation will occur upon retrial.

¶ 25                                III. CONCLUSION

¶ 26    For the foregoing reasons, we vacate the defendant's conviction and sentence for unlawful possession of drug paraphernalia and remand this case to the trial court for a new trial.


¶ 27    Vacated and remanded.